**In re Randy FLITTER aka Randall Allan Flitter and Marian Flitter, Debtors.**

**Bankruptcy No. 3–94–107.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

April 25, 1995.

Perry A. Berg, Patton, Hoversten & Berg, P.A., Waseca, MN, for debtors.

Mark C. Halverson, Chapter 7 Trustee, Halverson & Andreasen, Mankato, MN.

## ORDER GRANTING DEBTORS' MOTION FOR LIEN AVOIDANCE, IN PART, AND OVERRULING TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPTION, IN PART

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court for hearing on the Debtors' motion for lien avoidance. The Debtors appeared personally and by their attorney, Perry A. Berg. Chapter 7 Trustee Mark C. Halverson appeared for the bankruptcy estate. Upon the moving and responsive documents, the record made at the hearing, and the post-hearing memoranda submitted by counsel, the Court makes the following order.

The Debtors filed a voluntary petition under Chapter 7 on January 10, 1994. They are engaged in farming in Waseca County, Minnesota. On their Schedule B, they in-

cluded entries for livestock[1] of a total value of $5,175.00, and farming equipment[2] of a total value of $6,395.00. On their Schedule D, for creditors holding secured claims, they included an entry for Vern and Irma Flitter, of Pemberton, Minnesota.[3] They stated the amount of those persons' secured claim as $3,000.00 and identified the collateral as "MACHINERY" and "TRACTOR AND SKID LOADER." On their Schedule C, the Debtors claimed exemptions for all of their livestock and farming equipment, citing MINN.STAT. § 550.37 subd. 5[4] as their authority.

On March 24, 1994, the Trustee of their bankruptcy estate filed a paper entitled "Notice and Objection to Claimed Exempt Property." In it, he objected to the Debtors' claim of exemption in, *inter alia*, their equipment and livestock, on the following ground:

> The trustee's preliminary investigation reveals that these items may be subject to an unperfected security interest voidable by the trustee, in which case the debtors cannot exempt the items that they recovered by the trustee and are subject to a voluntary transfer—as would be the case with the grant of a security agreement [sic].

Contrary to the requirements of LOC. R.BANKR.P. (D.MINN.) 702 and 1202 and Local Form 1202, the Trustee did not give

1. Specifically, they listed 30 head of sows, 75 feeder pigs, and 2 boars as the livestock that they owned as of the commencement of this case.

2. In an exhibit to the Schedule B, they gave a detailed list of this equipment.

3. Vern and Irma Flitter are the parents of Debtor Randy Flitter. For brevity, they will be identified as "the elder Flitters."

4. This statute grants an exemption from collection process for

   [f]arm machines and implements used in farming operations by a debtor engaged principally in farming, livestock, farm produce, and standing crops, not exceeding $13,000 in value.

5. In pertinent part, this statute provides:

   (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled

notice of a hearing on this objection. He has not yet done so.

On July 7, 1994, the Debtors filed the motion at bar. In its text, they averred that the elder Flitters claim a security interest against the Debtors' livestock, machinery, equipment, and all crops, under color of a security agreement and accompanying UCC–1 financing statement filed on September 1, 1989. Asserting that the existence of this security interest impairs any allowable claim of exemption in those items to which they would entitled, they request that it be avoided pursuant to 11 U.S.C. § 522(f)(2)(B).[5]

Though he is not a named party-respondent to this motion, the Trustee has filed an objection to it. He asserts that the Debtors' hypothetical equity interest in the elder Flitters' collateral is not subject to exemption in this case, and therefore cannot be recovered by the Debtors via a remedy that is dependent on exemptibility like § 522(f) is. He bases his argument on a sequence of four propositions:

1. The Debtors voluntarily granted the security interest to the elder Flitters.

2. The elder Flitters' security interest is presently unperfected and hence is subject to avoidance or subordination at his instance pursuant to 11 U.S.C. § 544(a).[6]

   under [11 U.S.C. § 522](b) ..., if such lien is—

   . . . . .

   (2) a nonpossessory, nonpurchase-money security interest in any—

   . . . . .

   (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor ...

6. In pertinent part, this statute provides:
   (a) The trustee shall have, as of the commencement of the [bankruptcy] case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]

3. Were he to take his avoidance remedies, the Debtors could not use 11 U.S.C. § 522(g) to claim an exemption for the value in the collateral that he would have recovered.

4. Because in such an instance the Debtors would not be able to claim any recovered value as exempt, they should not be allowed to "prejudice" the estate's avoidance powers by exercising their own remedy before he does.

As framed by the pleadings for this motion, then, the issue is an interesting one: as between a debtor's right of lien avoidance under § 522(f)(2) and a trustee's avoidance and recovery powers under 11 U.S.C. §§ 544, 550, and 551, which one trumps? There is very little published caselaw that addresses this question, even in passing.

■■■ Ultimately, the Trustee's argument is flawed by its failure to recognize a nuance inherent in the very structure of § 522(g). He is correct in the first several premises of his argument: if the elder Flitters' lien was not perfected as of the commencement of this case, the Trustee could have exercised his strong-arm powers against the liens. Then, had he been successful, 11 U.S.C. § 551 would have preserved the Debtors' original transfer for the benefit of the estate,[7] and 11 U.S.C. § 550(a)[8] would have enabled him to recover the full unencumbered ownership in the subject assets from the elder Flitters.

After that, however, it gets a bit more complicated than the Trustee acknowledges.

■■■ 11 U.S.C. § 522(g) gives debtors a right to reclaim such recovered property back from the estate in certain cases.[9] Congress afforded this right to give debtors an enhanced benefit from statutory exemption rights. H.R.REP. No. 595, 95th Cong. 1st Sess. 362–363 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 76–77 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5861–5863, 6317–6319. As the Trustee points out, § 522(g) imposes one significant limitation on this right, by negative implication: where in the first place a debtor voluntarily parted with the value that the trustee has recovered—as, for example, by a consensual grant of security interest—he cannot meet the requirement of § 522(g)(1)(A), and cannot use § 522(g)(1) as the basis for his claim of exemption. However, § 522(g)(2) opens the debtor's right back out again, for the classes of assets that are subject to a debtor's lien avoidance powers under § 522(f). *In re Hollinsed,* 54 B.R. 155, 156 (Bankr.W.D.Wis. 1984); *In re Dipalma,* 24 B.R. 385, 387–88 (Bankr.D.Mass.1982). For this source of secondary exemption rights, it is irrelevant

---

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists . . .

The Eighth Circuit has recognized that this provision gives the trustee the power to avoid unperfected liens against property of the bankruptcy estate, or at least to subordinate them to the estate's claim to the same property. *Saline State Bank v. Mahloch,* 834 F.2d 690, 692 (8th Cir. 1987); *In re Shuster,* 784 F.2d 883, 884 (8th Cir.1986).

7. It does so in just so many words:

Any transfer avoided under [11 U.S.C. §] . . . 544 . . . is preserved for the benefit of the estate but only with respect to property of the estate.

8. This statute effectuates various trustees' powers. In the part pertinent to this case, it provides:

. . . to the extent that a transfer is avoided under [11 U.S.C. §] 544 . . . the Trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made . . .

9. It does so by providing, in pertinent part:

(g) Notwithstanding [11 U.S.C. §§] 550 and 551 . . . the debtor may exempt under . . . [11 U.S.C. § 522](b) . . . property that the trustee recovers under [11 U.S.C. §§] . . . 550, [or] 551, . . . to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
(B) the debtor did not conceal such property; or
(2) the debtor could have avoided such transfer under [11 U.S.C. § 522](f)(2) . . .

942

whether the original transfer was voluntary or involuntary.[10]

Section 522(g)(2), then, is the authority that defeats the Trustee's argument and trumps his avoidance remedies, to the extent of the Debtors' lien avoidance remedy under § 522(f). As long as the Debtors have invoked their remedy first, 11 U.S.C. § 522(i) gives them the right to recover the assets that are subject to it, directly from the elder Flitters and free and clear of their lien.[11]

The structuring of final relief on the Debtors' motion, however, requires a little more refinement than they have given it. They have requested an order avoiding the elder Flitters' lien against *all* of their collateral, including crops, farm-product inventory, and livestock.[12] They fail to recognize, however, that their power to unseat liens under § 522(f)(2) does not extend to all classes of assets that, in the absence of liens, they could shelter from the estate via exemption under § 522(b). *In re Thompson*, 750 F.2d 628, 631 (8th Cir.1984). A debtor's lien avoidance power under § 522(f)(2) lies against only the categories of assets that are identified in its enabling statute. *In re Psick*, 61 B.R. 308, 313 (Bankr.D.Minn.1985). In the present case, those assets amount to "implements, ... or tools, of the trade of the debtor ..." 11 U.S.C. § 522(f)(2)(B). Though a debtor may avoid nonpossessory, nonpurchase-money security interests in "animals" and

"crops," he may do so only to the extent that such property is "held primarily *for the personal, family, or household use* of the debtor or a dependent of the debtor." 11 U.S.C. § 522(f)(2)(A) (emphasis added). The Debtors here were and are livestock and crop farmers. As such, they held the fruits of that activity as business inventory, in the nature of capital assets, and lien avoidance under § 522(f)(2) cannot divest the elder Flitters' liens against them. *In re Thompson*, 750 F.2d at 630–31.[13]

The remedy will lie against the balance of the assets in controversy here, the farm machinery and equipment that is properly allowed as exempt to the Debtors. Though technically the Trustee's objection to the Debtors' claim of exemption in those assets is not before the Court, there is no reason not to enter an order overruling it; the Trustee's theory of objection is not meritorious as to those assets, and they should be vested in the Debtors, free and clear of the claims of either the elder Flitters or the estate, without further delay.

IT IS THEREFORE ORDERED:

1. That the Trustee's objection to the Debtors' claim of exemption in the following farm equipment and machinery:

J.D. 4020 Tractor
Plow 1/2
Field Cultivator

---

**10.** Basically, the Trustee erred in not recognizing that § 522(g)(1)(A) does not modify § 522(g)(2). The error is understandable, to some extent. The multilayered cross-referencing in §§ 522(f)–(i) confuses even those readers who are versed in bankruptcy theory; it certainly does not promote a simple and prompt application of these provisions.

**11.** Section 522(i) does so by vesting a debtor with certain of the ancillary powers that a trustee has to effectuate avoidance remedies, through the following pertinent language:
(1) If the debtor avoids a transfer or recovers a setoff under [11 U.S.C. §§ 522](f) or (h) ..., the debtor may recover in the manner prescribed by, and subject to the limitations of, [11 U.S.C. §] 550 ..., the same as if the trustee had avoided such transfer, and may exempt any property so recovered under [11 U.S.C. § 522](b) ...
(2) Notwithstanding [11 U.S.C. §] 551 ... a transfer avoided ... under [11 U.S.C.

§ 522](f) or (h) ..., may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under [11 U.S.C. § 522](g) ... or [11 U.S.C. § 522(i) ](1) ...
The last clause of § 522(i)(1) mirrors the predicate assumption of § 522(g)(2), and reinforces the Court's prior conclusion.

**12.** During the pendency of the Trustee's objection and this motion, the Debtors had to liquidate the livestock that was on-hand as of the commencement of this case. The Debtors and the Trustee agreed to escrow the proceeds pending the outcome of this motion. Those funds are on deposit and, pursuant to this Court's order, they are impressed with all claims that the bankruptcy estate had against the original livestock.

**13.** This leaves the elder Flitters' lien against these assets or their proceeds as the potential subject of an avoidance action by the Trustee.

Hydramatic 1/2
Blower
Flail Spreader
Sprayer
Cultivator–4
Stalk Chopper
Chiesal Plow
JD Planter 8
Pressure Washer
Calf Stalls
Hog Sheds
Fence Panels
Hog Feeders (2)
Hog Feeder
Farrowing Crates
Hog Waterers
Hog Water Heater
Feeders Crates
Hog Carrier
Farrow Crates
Hog Feeders
Waterer
Hog Feeder
Gates Crates
Huts

is overruled, and the Debtors shall henceforth hold that farm machinery and equipment free and clear of any claims of the bankruptcy estate.

2. That the lien that Vern and Irma Flitter held or asserted against the farm machinery and equipment described in Term 1 of this order as of the commencement of this case is avoided pursuant to 11 U.S.C. § 522(f)(2)(B). Pursuant to 11 U.S.C. § 522(i), the Debtors shall hold that farm machinery and equipment free and clear of any claim or interest of Vern and Irma Flitter.

3. That the Debtors' motion for lien avoidance is denied in all other respects.

4. That the lien impressed against certain funds pursuant to Term 2 of this Court's order of July 27, 1994, shall continue in force and effect. The according of relief under this order shall not prejudice the estate's right, if any, to recover any and all livestock, crops, farm products and farm inventory that the Debtors had on hand as of the commencement of this case, and the proceeds thereof, against the claims of any party holding or asserting a security interest in them.

5. That, to advance the estate's claim to the assets identified in Term 4 of this order, the Trustee shall file an adversary proceeding for appropriate relief against Vern and Irma Flitter within 30 days of the date of this order.